IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEITH TESKY, MARK TESSMER,
KENNETH OLLERMAN,
CHRISTOPHER VANGOETHEM, and
KAL TESKY, on behalf of themselves and
all others similarly situated,

      Plaintiffs,

v.

BONE & JOINT CLINIC, S.C.,

      Defendant.

OPINION and ORDER

23-cv-184-jdp
23-cv-187-jdp
23-cv-189-jdp
23-cv-287-jdp

---

  These consolidated proposed class actions arise from a cyberattack on defendant Bone & Joint Clinic, S.C. Plaintiffs allege that the Clinic's failure to adequately protect its computer network allowed cybercriminals to steal personal information of current and former Clinic patients and employees. The parties informed the court that they settled the case in principle. Now before the court is plaintiffs' unopposed motion for preliminarily approval of the settlement. Dkt. 29. The court will deny the motion without prejudice to allow plaintiffs to address the concerns discussed below.

  1. The court has an independent obligation to ensure that jurisdiction is proper, *see Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021), and there are two potential jurisdictional issues in this case. First, one of the requirements to establish jurisdiction in class actions arising under state law is to show "minimal diversity," which means that at least one proposed class member is a citizen of a different state from the defendant. 28 U.S.C. § 1332(d). But the Clinic and the named plaintiffs are all citizens of Wisconsin. In the consolidated amended complaint, plaintiffs say that the minimal diversity requirement is met because "[t]he

number of class members exceeds 100, some of whom have different citizenship from Defendant." Dkt. 13, at ¶ 33. This assertion that "some" of the class members have citizenship outside Wisconsin is insufficient to establish minimal diversity. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019). Plaintiffs must identify at least one specific class member who is a citizen of a state other than Wisconsin to satisfy the minimal diversity requirement. *Id.* The court will give plaintiffs an opportunity to provide evidence that shows there is minimal diversity.

The second potential jurisdictional issue concerns standing. Plaintiffs must have suffered an injury in fact to have standing to bring their claims in federal court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A "risk of future harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court," *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022), and the risk of harm from a data breach can be too speculative to establish an injury in fact, *see, e.g.*, *Baysal v. Midvale Indem. Co.*, No. 21-cv-394-wmc, 2022 WL 1155295, at *3 (W.D. Wis. Apr. 19, 2022). Here, the plaintiffs alleged that they spent time and money mitigating the risk of identity theft. In a recent data breach case that involved similar allegations, this court rejected the defendant's contention that the plaintiff's allegations were insufficiently concrete to show an injury in fact. *See Linman v. Marten Transp., Ltd.*, No. 22-cv-204-jdp, 2023 WL 2562712, at *3 (W.D. Wis. Mar. 17, 2023). For the reasons explained in the court's order denying in part defendant's motion to dismiss in *Linman*, the court concludes that the plaintiffs in this case have standing to sue for damages.

2. Plaintiffs do not provide a complete breakdown of the estimated payments from the proposed settlement fund, explain how the parties came up with the proposed settlement amount, or explain how the plaintiffs calculated the estimated payments to class members.

2

This makes it impossible for the court to make even a preliminary determination regarding whether the settlement is substantively fair.

Under the agreement, the Clinic is to pay $575,000 to establish a common settlement fund, which will be used to pay attorney fees, litigation expenses, an incentive award to plaintiffs, the cost of notice and administrative expenses, and payments to class members. The settlement agreement and plaintiffs' brief in support of the motion for preliminary approval estimate the following amounts for fees and expenses:

- $191,475 for attorney's fees;
- $20,000 for litigation expenses; and
- $2,000 per representative for named plaintiffs' incentive awards (for a total of $10,000 in service awards).

Dkt. 31-1, at 16 and Dkt. 33, at 34–35. If the court were to grant the requested expense, fee, and service awards, it would leave $353,525 of the settlement fund for administrative expenses and payments to class members. Payments to class members will consist of: (1) compensation for documented out-of-pocket losses up to a total of $5,000 per class member; and (2) a pro rata cash payment from any remaining funds, which is estimated to be $75 per class member but could be higher or lower depending on what funds remain after all the other distributions. None of the settlement fund will revert to the Clinic.

The court is satisfied that the settlement is procedurally fair. There is no indication of collusion between the parties, and they reached the central terms of the settlement after arm's length negotiations mediated by a retired federal judge with experience conducting class action mediations.

But plaintiffs fail to provide information about the substance of the settlement that the court needs to assess the adequacy of the relief and whether the proposed settlement treats class members equitably. Specifically, there are three problems with plaintiffs' submissions in support of their motion for preliminary approval of the settlement agreement. First, plaintiffs do not provide an estimate for the cost of notice and administration expenses. Without that estimate, the court cannot determine how much of the proposed settlement fund is estimated to remain for distribution to the class.

Second, plaintiffs do not explain how they calculated the settlement amount and decided what types of payments would be made to class members. In most cases, plaintiffs' counsel will calculate or estimate the maximum amount of damages the class could recover based on the plaintiffs' theory of the case, and then explain why the discount in the proposed settlement is a reasonable one. Such an approach can be difficult to apply to data breach cases because it is difficult to precisely quantify the relatively small injuries to individual class members. But that challenge does not mean that it is impossible for plaintiffs to assess the value of their claims; at a minimum plaintiffs' counsel could estimate damages based on the average cost of the recommended steps to mitigate the risk of identity theft and compare this case to other data breach class action settlements. Yet plaintiffs provided no information whatsoever about how the parties reached the settlement structure and amount here.

Third, plaintiffs have not explained why they believe the settlement fund is likely to be able to cover all out-of-pocket loss claims or how the parties estimated $75 as the residual pro rata cash payments to class members. The settlement agreement and notice make it clear that the value of the cash payments, if any cash payments are made, will depend on how much of the settlement fund is left after all other payments. Claims for out-of-pocket losses will be paid

4

out before residual cash payments, and if valid claims for out-of-pocket losses exceed the total available settlement fund, then the out-of-pocket loss payments will be reduced on a pro rata basis and no cash payments will be made. But plaintiffs have not provided any information about how many class members they estimate will file claims, how many of those they estimate will file claims for out-of-pocket losses, or what they expect the average class member's share of the settlement will be. Without that information, the court cannot assess the adequacy of the relief that would be provided to the class.

3. Plaintiffs do not explain why a $2,000 incentive award for each of the five named plaintiffs is appropriate. In determining an appropriate amount for an incentive award, a court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In this case, class counsel describes the named plaintiffs' contributions to the case only in general terms and without any explanation of what the individual named plaintiffs contributed to the litigation, making it difficult for the court to evaluate whether the proposed award is appropriate. *See* Dkt. 31, ¶ 59 ("The Service Award is meant to compensate the Class Representatives for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing their respective Complaint(s), remaining available for consultation throughout the mediation and settlement negotiations, reviewing the Settlement Agreement, and answering counsel's many questions.") The requested amount isn't extraordinarily high, but it's high enough relative to the recovery by individual class members to require the parties to justify it.

5

4. The information plaintiffs provided about attorney fees is both flawed and insufficient to support a motion for attorney fees. The settlement agreement says that class counsel will ask for an award of attorney fees that does not exceed one-third of the settlement agreement, which it specifies is $191,475. But $191,475 is slightly less than one-third of the total settlement fund, so it is unclear how the parties reached that figure. And, more important, the total amount that the defendant pays is not the proper denominator when assessing attorney fees under the percentage-of-recovery method in this circuit. "The ratio that is relevant to assessing the reasonableness of the attorney's fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). This means that: (1) costs are not included in the denominator when assessing the reasonableness of attorney fees; and (2) the percentage is based on the actual recovery of the class. When class counsel moves for attorney fees, the parties should identify the amount of the settlement fund that will go to the class members.

Class counsel's motion for attorney fees must also comply with the court's procedures for fee petitions, which are available on the court's website, https://www.wiwd.uscourts.gov/judge-specific-procedures. Although counsel is relying on the percentage-of-recovery method to justify their fee request, this court requires a lodestar cross check to ensure that the fee award is not an unreasonable windfall. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). Counsel must provide a properly documented and supported explanation of its fees, as provided in the court's procedures for fee petitions.

5. Plaintiffs do not explain the proposed method of distributing relief to the class. The settlement agreement states that the settlement administrator, Epiq, will be responsible for distributing the settlement fund. Dkt. 31-1, at 7, 9. The settlement agreement also contains a

provision for what will happen if funds remain after settlement payments are sent out because recipients "fail to cash and/or deposit their settlement payments." *Id.* at 7. But the settlement agreement does not specify the process that Epiq will use to distribute the settlement payments. This is insufficient for the court to assess the effectiveness of the proposed method of distributing settlement payments to the class. The parties should address what process Epiq will use to validate addresses, how it will distribute payments—including whether and how Epiq will attempt to locate addresses for class members whose checks are returned as undeliverable—what type of electronic payments Epiq will use, and how long the distribution process will take.

6. The parties must address several issues with the proposed notice and claim forms. First, plaintiffs explain that notice will be sent to class members via email, but they do not provide a proposed email subject line or otherwise explain which version of the proposed notice forms will be sent via email, so the court is unable to evaluate whether the proposed email notice is reasonable. Second, the claim form erroneously states that the estimated pro rata cash payment is $750. *See* Dkt. 31-1, at 26. Third, in the paragraph following the table in which a claimant may list out of pocket expenses there is a reference to "Lost Time" payments. *Id.*, at 31. But that is not a category of payments available to class members in the settlement agreement.

Fourth, the section of the notice titled "How do I know if I am part of the Settlement" does not accurately define eligibility in the class. The notice says an individual is a class member if the person's information "was potentially impacted by the Data Incident, *including* if you were mailed a notification by or on behalf of the Clinic, regarding the Data Incident." *Id.*, at 37 (emphasis added). This is misleading because it suggests that someone could be a member of

7

the class if they were potentially impacted by the data breach, even if that individual was not sent notice of the data incident. But the settlement agreement defines class membership based on the objective criterion of whether an individual was sent notice that their private information was potentially affected by the data breach at issue in this case. The plaintiffs should revise this section of the notice to accurately convey that class definition. Plaintiffs should also carefully review the revised version to be sure that all parts of the notice contain accurate information about the settlement in this case.

ORDER

IT IS ORDERED that:

1. Plaintiffs' unopposed motion for certification of a class and for preliminary approval of the settlement, Dkt. 29, is DENIED without prejudice.

2. Plaintiffs may have until September 6, to file an amended motion addressing the concerns raised in this order.

Entered August 9, 2024.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge